## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RONALD LAMAR BOWMAN, # 179980,    *

                         *

     Petitioner,            *

                         *

vs.                         *   CIVIL ACTION NO. 18-00278-JB-B

                         *

JEFF DUNN,                *

                         *

     Respondent.          *

### REPORT AND RECOMMENDATION

Ronald Lamar Bowman, an Alabama state prison inmate in the custody of Respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Doc. 5 at 3-14). The petition has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2254 Cases.  The undersigned has conducted a careful review of the record and finds that no evidentiary hearing is required to resolve this case.[1]

---

[1] Because Bowman filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1337 (11th Cir. 2004).  Bowman has failed to establish that an evidentiary hearing is warranted in this case. See Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984) (en banc) ("The burden is on the petitioner in a habeas corpus proceeding to establish the need for an evidentiary hearing.").

Having carefully considered Bowman's petition, Respondent's answer and exhibits (Docs. 12, 17), and Bowman's reply (Doc. 13), the undersigned finds that Bowman's petition is untimely, that equitable tolling is inappropriate, and that Bowman has failed to demonstrate actual innocence as a gateway to review of his time-barred claims. Accordingly, it is **RECOMMENDED** that Bowman's habeas petition be **DISMISSED with prejudice** as time-barred pursuant to 28 U.S.C. § 2244(d)(1); that judgment be entered in favor of Respondent and against Bowman; and that Bowman is not entitled to the issuance of a certificate of appealability and is not entitled to appeal *in forma pauperis*.

## I. <u>BACKGROUND</u>

This matter arises out of the August 25, 1998 robbery and fatal shooting of Catherine Fuller Warren, a clerk at the Jr. Food convenience store in Marion, Alabama. Bowman was charged with the murder and convicted by a jury in the Circuit Court of Perry County, Alabama in January 2000. (Doc. 12-1 at 8). The court sentenced Bowman to life imprisonment without the possibility of parole. (<u>Id.</u>). Bowman appealed the conviction to the Alabama Court of Criminal Appeals, which reversed and remanded the case for a new trial because the court reporter failed to provide a transcript of the January 2000 trial proceedings. <u>Bowman v. State</u>, 820 So. 2d 168 (Ala. Crim. App. 2000).

Bowman was retried, and once again, on February 7, 2002, he was convicted and sentenced to life imprisonment without the possibility of parole. (Doc. 17-8 at 86-88, 90). Bowman timely appealed, and in a memorandum opinion dated April 25, 2003, the Court of Criminal Appeals affirmed his conviction. (Doc. 12-2 at 9; Doc. 12-6 at 56-60). Bowman sought a rehearing, which the Court of Criminal Appeals denied on May 16, 2003. (Doc. 12-3). On September 19, 2003, the Supreme Court of Alabama denied Bowman's petition for writ of certiorari, and certificates of judgment were issued by both the Supreme Court of Alabama and the Court of Criminal Appeals. (Doc. 12-4; Doc. 12-6 at 74).

On February 10, 2014, Bowman, through counsel, filed his first Rule 32 petition in the Circuit Court of Perry County. (Doc. 12-6 at 8-28). In his Rule 32 petition, Bowman alleged that his conviction should be set aside pursuant to Ala. R. Crim. P. 32.1(e) based on newly discovered evidence in the form of a recent recantation of the testimony given at trial by his wife,[2] Angela Bowman, and that the State withheld exculpatory information regarding its attempts to coerce Angela Bowman to testify against him. (Id. at 10-23). Bowman attached to his petition the

---

[2] Bowman was married to Angela Bowman at the time of the murder for which he was convicted. They subsequently divorced and were not married at the time Angela Bowman executed the affidavit recanting her testimony on December 10, 2013. (See Doc. 12-6 at 26).

affidavit of Angela Bowman, who stated that her testimony during Bowman's murder trial[3] was coerced, untrue, and the result of threats by the authorities and others, and that Bowman could not have committed the murder because "[a]t the time the police said it happened, we were talking to a friend at someone else's house." (Id. at 26-28). The State filed a response in opposition, and on May 20, 2014, the court entered an order summarily denying Bowman's Rule 32 petition, which adopted in its entirety a proposed order submitted by the State. (See Doc. 12 at 3; Doc. 12-6 at 29-76). After Bowman's counsel filed objections, the circuit court set aside its order denying Bowman's petition and set the matter for a hearing. (Doc. 12-6 at 77-79, 81).

---

[3] At trial, Angela Bowman testified that Ronald Bowman was driving her father's vehicle on the morning of the murder, with Angela Bowman and two of her children riding as passengers in the vehicle. (Doc. 17-7 at 142). Ms. Bowman testified that she and her husband had an argument about money that morning and, at one point, Mr. Bowman drove past several convenience stores and stated that he could rob each of those stores. (Id. at 145-47). Ms. Bowman testified that when her husband drove past the Jr. Food store, he parked the vehicle down the street, exited the vehicle with a gun, and, when he returned to the vehicle, he had money in his hand. (Id. at 144-47). She testified that she asked her husband repeatedly where he got the money, and that he eventually told her that he shot the convenience store clerk. (Id. at 148-50). After she testified before a grand jury, the grand jury indicted Angela Bowman for capital murder in February 1999. (Id. at 156). In March 2000, the State filed a motion to withdraw and file Angela Bowman's criminal case after she testified on behalf of the State in Bowman's first murder trial, pursuant to an agreement between Angela Bowman and the State, and her case was withdrawn and filed on March 23, 2000. (Doc. 12-6 at 136).

Bowman's counsel filed an amended Rule 32 petition on March 12, 2015. (Id. at 97-114). In the amended petition, Bowman stated that he was not advancing one of the arguments set forth in his prior petition, namely, the argument that newly discovered facts (i.e., the recantation of Angela Bowman's testimony) required that his sentence be set aside pursuant to Ala. R. Crim. P. 32.1(e). (Id. at 98-99 n.1). Instead, Bowman's amended petition asserted only that the State withheld exculpatory and impeachment information regarding "the agreements it made and coercion it exerted on the key witness," Angela Bowman, thus violating Bowman's constitutional rights under Brady v. Maryland, 373 U.S. 83 (1963). (Id. at 99-109). Bowman later filed a supplement to his amended Rule 32 petition, alleging that updated Alacourt court records showed that the State made a deal with Angela Bowman requiring her to assist them in apprehending her husband and testify against him in exchange for immunity from prosecution, that this information was never disclosed to Bowman or his trial attorneys, and that the State compelled Angela Bowman to testify against her husband in violation of spousal privilege. (Id. at 126-32).

On November 22, 2015, the circuit court issued an order denying Bowman's petition. (Id. at 147-48). The court found that Bowman was not entitled to relief on his Rule 32 Brady claim because, in view of Bowman's "numerous" confessions to the murder, the alleged newly discovered evidence would not have changed the

results of his trial or established his innocence. (Id.). The court also found Bowman's spousal privilege claim to be procedurally barred by Rule 32.2(c), and his allegations of a conspiracy between multiple attorneys and a State investigator not to be credible. (Id. at 148).

Bowman, through counsel, appealed the circuit court's order, but on July 6, 2016, the Court of Criminal Appeals issued an order dismissing Bowman's appeal as untimely. (Doc. 12-5; Doc. 12-6 at 153-54). In the order, the appellate court cited Loggins v. State, 910 So. 2d 146, 149 (Ala. Crim. App. 2005), for the proposition that while a Rule 32 petitioner may file a post-judgment motion to reconsider or modify the judgment, the filing of such a motion neither extends the circuit court's jurisdiction beyond thirty days after denial of the petition nor tolls the time for filing a notice of appeal. (Doc. 12-5 at 2). Thus, the Court of Criminal Appeals found that the circuit court lost jurisdiction to modify its ruling thirty days after it issued its initial order on May 20, 2014. (Id.). This meant that the circuit court's November 22, 2015 order was void, and that only its May 2014 order was a valid order from which Bowman could appeal. (Id.). However, since Bowman did not file his notice of appeal until December 22, 2015,[4] the court dismissed Bowman's appeal as untimely. (Id.).

---

[4] A petitioner has forty-two days to appeal the denial of a Rule 32 petition. Ala. R. App. P. 4(a).

Bowman's attorney filed a second Rule 32 petition[5] on February 8, 2017, alleging that Bowman was entitled to relief on a number of grounds, including the ineffective assistance of his counsel in not timely appealing the court's May 2014 denial of his Rule 32 petition. (Doc. 12-6 at 159-67; Doc. 12-7; Doc. 12-8 at 1-11). After a hearing, the circuit court entered an order on April 24, 2017, permitting Bowman to seek an out-of-time appeal of the court's May 2014 denial of his first Rule 32 petition. (Doc. 12-8 at 35-36, 57-65). Bowman, through counsel, filed a notice of appeal on June 6, 2017. (Id. at 37). In a memorandum opinion dated December 15, 2017, the Court of Criminal Appeals affirmed the circuit court's dismissal of Bowman's Rule 32 petition. (Doc. 12-11). The court found that Bowman failed to sufficiently plead the elements of newly discovered evidence under Rule 32.1(e) because, in view of his confessions and the other evidence presented against him at trial, he failed to set forth sufficient

---

[5]  On January 13, 2005, [the Supreme Court of Alabama] adopted an order amending Rule 32.1(f), Ala. R.Crim. P., effective June 1, 2005. The amended rule provides that a petitioner may obtain an out-of-time appeal if "[t]he petitioner failed to appeal within the prescribed time from the conviction or sentence itself or from the dismissal or denial of a petition previously filed pursuant to this rule and that failure was without fault on the petitioner's part." Therefore, after June 1, 2005, the proper method of seeking an out-of-time appeal from the denial of a Rule 32 petition is by filing another Rule 32 petition.

Ex parte V.S., 918 So. 2d 908, 912 n.3 (Ala. 2005).

facts establishing his innocence. (Id. at 5-6). With regard to Bowman's Brady claim, the court found that the allegedly suppressed evidence did not meet the standard for materiality required to prove a Brady violation because, given the overwhelming evidence of Bowman's guilt, there was no reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense. (Id. at 6-8). Bowman filed an application for rehearing (Doc. 12-12), which the Court of Criminal Appeals overruled on January 12, 2018. (Doc. 12-13). Bowman then petitioned the Supreme Court of Alabama for a writ of certiorari. (Doc. 12-14). On March 16, 2018, the Supreme Court of Alabama denied Bowman's petition for writ of certiorari and issued a certificate of judgment. (Doc. 12-15).

Bowman, through counsel, then filed the instant petition seeking federal habeas corpus relief on May 11, 2018. (Doc. 5 at 3-14). In his federal habeas petition, Bowman argues that he is entitled to a new trial because he is actually innocent and because the State obtained his conviction through the use of Angela Bowman's perjured testimony. (Id. at 8-13).

Respondent counters that Bowman's habeas petition is time-barred by the one-year statute of limitations contained in 28 U.S.C. § 2244(d). (Doc. 12 at 5-8). Respondent denies that Angela Bowman's recanting affidavit establishes Bowman's innocence and maintains that "other overwhelming evidence, including Bowman's

own confessions, established his guilt." (Id. at 1).
Additionally, to the extent Bowman argues that the State knowingly
used perjured testimony, Respondent asserts that this claim is
procedurally defaulted because Bowman never presented it at the
state court level. (Id. at 2).

In his reply, Bowman contends that procedural default and §
2244(d)'s statute of limitations are inapplicable in this matter
because Bowman has asserted and demonstrated that he is actually
innocent. (Doc. 13 at 1-2). Bowman also appears to argue that,
regardless of his actual innocence claim, his state court post-
conviction proceedings tolled the period of limitation, making his
petition timely. (Id. at 1 n.1). Bowman's habeas petition has
been fully briefed and is ripe for consideration.

## II.  **STANDARD OF REVIEW**.

The Court's review of Bowman's petition is governed by the
Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").
Under the AEDPA, "the role of the federal courts is strictly
limited." Jones v. Walker, 496 F.3d 1216, 1226 (11th Cir. 2007).
Specifically, 28 U.S.C. § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly

established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

(e)(1) In a proceeding instituted by an application for
a writ of habeas corpus by a person in custody pursuant
to the judgment of a State court, a determination of a
factual issue made by a State court shall be presumed to
be correct. The applicant shall have the burden of
rebutting the presumption of correctness by clear and
convincing evidence.

28 U.S.C. § 2254.

Thus, a federal court may grant habeas relief only if the
state court arrives at a conclusion contrary to that reached by
the United States Supreme Court on a question of law or decides a
case differently from the way the United States Supreme Court did
on a set of materially indistinguishable facts, or if the state
court's decision involves an unreasonable factual determination.
Williams v. Taylor, 529 U.S. 362, 405 (2000); Price v. Vincent,
538 U.S. 634, 638-41 (2003) (noting that a federal habeas court
will disturb a state court's decision on the merits only if the
petitioner shows that the decision was contrary to, or involved an
unreasonable application of, clearly established constitutional
law as determined by the Supreme Court, or if the decision rested
upon an unreasonable factual determination).

"[A] state prisoner must show that the state court's ruling
on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). In other words, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied. . . . [T]he deference due is heavy and purposely presents a daunting hurdle for a habeas petitioner to clear." Loggins v. Thomas, 654 F.3d 1204, 1220 (11th Cir. 2011); see also Greene v. Fisher, 565 U.S. 34, 38 (2011) (noting that the AEDPA standard is purposely onerous because "federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction") (quotation omitted); Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (noting that the AEDPA standard "is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (quotations omitted).

Accordingly, in evaluating Bowman's § 2254 petition, the Court takes care to abide by the stricture that "[a] federal court may not grant habeas relief on a claim a state court has rejected on the merits simply because the state court held a view different from its own." Hill v. Humphrey, 662 F.3d 1335, 1355 (11th Cir. 2011); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1286 (11th Cir. 2012) ("This inquiry is different from determining

whether we would decide *de novo* that the petitioner's claim had merit."). Having established the proper standard of review, the Court first examines the timeliness of Bowman's claims.

## III. <u>ANALYSIS</u>

### A. Untimeliness.

Pursuant to 28 U.S.C. § 2244(d), as amended by the AEDPA, a state prisoner seeking a federal habeas corpus remedy must file his habeas corpus petition within a one-year period of limitation. The statute provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of
limitation under this subsection.

28 U.S.C. § 2244(d).

Bowman has made no showing that he is entitled to rely on
either of the triggering dates provided in subsections (B) or (C)
of § 2244(d)(1). Moreover, the undersigned finds, for the reasons
set forth below, that Bowman's habeas petition is untimely
regardless of whether subsection (A) or (D) applies.

Under § 2244(d)(1)(A), the one-year limitation period
commences on "the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review." Id. at § 2244(d)(1)(A); see also Pugh v.
Smith, 465 F.3d 1295, 1298 (11th Cir. 2006). As noted *supra*, the
Court of Criminal Appeals affirmed Bowman's conviction on direct
appeal and denied rehearing, the Supreme Court of Alabama denied
certiorari, and certificates of judgment were issued on September
19, 2003. Thus, Bowman's judgment of conviction became final on
or about December 18, 2003, upon the expiration of the ninety-day
period for Bowman to seek review in the United States Supreme
Court. See Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002);
Pugh, 465 F.3d at 1299. Accordingly, the limitation period under
§ 2244(d)(1)(A) began running on December 18, 2003 and, as no
tolling events occurred in the year that followed, expired one
year later, in December 2004. Thus, if relegated to §

2244(d)(1)(A), Bowman's petition, which was filed on May 11, 2018, is unquestionably untimely.

Bowman, however, implicitly argues that § 2244(d)(1)(D) applies, and that the statute of limitations should run from December 10, 2013, the date on which Angela Bowman signed the affidavit recanting her trial testimony.[6]  Under § 2244(d)(1)(D), the one-year period of limitation runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  The limitation period under § 2244(d)(1)(D) starts when the new evidence was discoverable through the exercise of due diligence, not when the new evidence was actually discovered. Melson v. Allen, 548 F.3d 993, 999 (11th Cir. 2008), vacated on other grounds, 561 U.S. 1001 (2010).  In this context, due diligence "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts.  Moreover, the due diligence inquiry is an individualized one that 'must take into account the conditions of confinement and the reality of the prison system.'" Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002) (citations omitted).

---

[6] Bowman cannot in good faith claim that he became aware of Angela Bowman's recantation any *later* than December 10, 2013, as he represented in a state court filing that he discovered the information on that date.  (See Doc. 12-6 at 108).

"Multiple courts have held that a witness's recantation can serve as the factual predicate from which the limitations period begins to run." DiCaprio-Cuozzo v. Johnson, 744 F. Supp. 2d 548, 557 (E.D. Va. 2010) (collecting cases); see, e.g., Cooper v. McDaniel, 2013 U.S. Dist. LEXIS 45894, at *25, 2013 WL 1315079, at *8 (D. Nev. Mar. 28, 2013) ("Knowledge of Wells' recantation was not available to petitioner until Wells signed the declaration recanting his trial testimony on July 30, 1997. The factual predicate of the Brady and Napue related claims . . . could not have been discovered by petitioner until July 30, 1997. This triggered a new one-year statute of limitations under § 2244(d)(1)."); U.S. ex rel. Daniels v. McAdory, 2004 U.S. Dist. LEXIS 7235, at *13-14, 2004 WL 906013, at *4 (N.D. Ill. Apr. 27, 2004) ("Daniels became aware of the factual predicates for his claims the day Rollins executed an affidavit recanting his identification testimony at Daniels' trial . . . . Under § 2244(d)(1), the time for filing a habeas petition in federal court expired one year later."), aff'd sub nom. Daniels v. Uchtman, 421 F.3d 490 (7th Cir. 2005), cert. denied, 546 U.S. 1095 (2006).

Assuming arguendo that § 2244(d)(1)(D) applies, and that Bowman had no notice of the factual predicate of his claim before Angela Bowman actually signed the affidavit attesting to his innocence, the limitation period began running on December 10, 2013. Section 2244(d)(2) of the AEDPA provides for the tolling of

the limitation period pending state court review of a properly filed application for post-conviction relief.  See In re Hill, 437 F.3d 1080, 1083 (11th Cir. 2006).  The period of limitation ran for sixty-one days, from December 10, 2013 until February 10, 2014, when Bowman filed his first Rule 32 petition.  As discussed previously, the circuit court denied Bowman's first Rule 32 petition on May 20, 2014.  While Bowman filed objections to the circuit court's May 20, 2014 order, and the circuit court later withdrew the order and issued a new order on November 22, 2015, the Court of Criminal Appeals determined on appeal that the circuit court's November 2015 order was void, and that an appeal of the May 20, 2014 order was untimely.  As a result, pursuant to § 2244(d)(2), the filing of Bowman's first Rule 32 petition tolled the statute of limitations only through July 1, 2014, the last day he could have timely appealed the circuit court's May 20, 2014 denial of his Rule 32 petition.  See Loggins, 910 So. 2d at 149; Jackson v. Davenport, 2015 U.S. Dist. LEXIS 177014, at *13, 2015 WL 10491200, at *4 (M.D. Ala. Dec. 11, 2015) ("Petitioner's initial Rule 32 proceedings stopped tolling the AEDPA limitations period when the proceedings ceased to be pending, which happened on October 4, 2008, or the last day he could have appealed the trial court's decision."), report and recommendation adopted, 2016 U.S. Dist. LEXIS 34442, 2016 WL 1060810 (M.D. Ala. Mar. 17, 2016).

Bowman then filed another Rule 32 petition on February 8, 2017, requesting, *inter alia*, leave to file a belated appeal from the denial of his initial Rule 32 petition. By that time, the limitation period had run for an additional 952 days, beginning on July 2, 2014, while there was no "properly filed" post-conviction motion pending in state court. Thus, by the time Bowman filed his second Rule 32 petition in February 2017, the § 2244(d)(1)(D) limitation period had long since expired and, consequently, that petition had no tolling effect. See <u>McMillan v. Sec'y for Dep't of Corr.</u>, 257 F. App'x 249, 253 (11th Cir. 2007) (per curiam) ("[W]e reject the argument that a state post-conviction motion remains 'pending' after the standard time to file an appeal expires merely because a state provides a procedure for seeking an out-of-time appeal in special circumstances or because a state court ultimately grants a petition for an out-of-time appeal."); <u>Bernadeu v. McNeil</u>, 432 F. App'x 823, 824 (11th Cir. 2011) (per curiam) ("[I]f a petition for belated appeal is filed after the § 2244 statute of limitations has expired, 'it does not reset or restart the statute of limitations.'") (quoting <u>Moore v. Crosby</u>, 321 F.3d 1377, 1381 (11th Cir. 2003)); <u>Hancock v. Estes</u>, 2014 U.S. Dist. LEXIS 110243, 2014 WL 3898085, at *5 (S.D. Ala. Aug. 11, 2014) ("Eleventh Circuit precedent is clear that motions for a belated state court appeal filed outside of the AEDPA limitations period, even if ultimately granted, do not serve to revive an

expired AEDPA limitations period."); <u>Livingston v. Streeter</u>, 2017 U.S. Dist. LEXIS 192024, at *44 n.35, 2017 WL 5586381, at *14 n.35 (S.D. Ala. Oct. 27, 2017) ("The fact that Alabama law provides that a defendant may seek an out-of time appeal from the dismissal of a Rule 32 petition by filing another Rule 32 petition seeking that relief under 32.1(f) . . . offers no additional argument for Livingston in this case given that the one-year limitations period has long since expired and the Eleventh Circuit has specifically rejected 'the argument that a state post-conviction motion remains "pending" after the standard time to file an appeal expires merely because a state provides a procedure for seeking an out-of-time appeal in special circumstances or because a state court ultimately grants a petition for an out-of-time appeal.'") (quoting <u>McMillan</u>, 257 F. App'x at 253), <u>report and recommendation adopted</u>, 2017 U.S. Dist. LEXIS 191382, 2017 WL 5585631 (S.D. Ala. Nov. 20, 2017); <u>McCartha v. Giles</u>, 2015 WL 6150584, at *3 (M.D. Ala. Oct. 19, 2015) ("Although McCartha filed a second Rule 32 petition on June 25, 2009, that filing, in which he claimed among other things that he was entitled to an out-of-time appeal from the denial of his first Rule 32 petition, occurred long after the January 7, 2008, expiration of the federal limitation period. Consequently, that filing had no tolling effect under § 2244(d)(2). Although the second Rule 32 petition was successful in obtaining McCartha an out-of-time appeal from the denial of his first Rule 32 petition,

there was no 'properly filed' state post-conviction petition pending in the state courts between October 11, 2007, and June 25, 2009. The federal limitation period, as noted, expired on January 7, 2008."); Mashburn v. Comm'r, Ala. Dep't of Corr., 713 F. App'x 832, 836-37 (11th Cir. 2017).

In view of the foregoing, the Court finds that Bowman's habeas petition was not filed within the one-year period of limitation, regardless of whether that period is calculated under § 2244(d)(1)(A) or § 2244(d)(1)(D). Therefore, Bowman's claims are time-barred, unless he can demonstrate that he is entitled to equitable tolling or another exception to the time bar.

**B.  Equitable Tolling.**

Case law directs that the AEDPA limitation period "may be equitably tolled" on grounds apart from those specified in the habeas statute "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam). The Eleventh Circuit has stated that:

> Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik, 177 F.3d at 1271. Equitable tolling is an extraordinary remedy, which is typically applied sparingly.

Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000); see also Holland v. Florida, 560 U.S. 631, 645, 649 (2010) ("[W]e hold that § 2244(d) is subject to equitable tolling in appropriate cases. . . . We have previously made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.") (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Moreover, as a general rule, "[t]he 'extraordinary circumstances' standard applied in this circuit focuses on the circumstances surrounding the late filing of the habeas petition, rather than the circumstances surrounding the underlying conviction." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1314-15 (11th Cir. 2001) (per curiam).

In this case, Bowman has not raised an equitable tolling argument, and the record does not suggest any justification for equitable tolling of the statutory limitation period. Indeed, Bowman's only conceivable argument for equitable tolling is based on his attorney's failure to timely appeal the May 2014 denial of his first Rule 32 petition, which resulted in the period from July 2014 to February 2017 during which there was no "properly filed" post-conviction motion pending in state court and, consequently (assuming without deciding that the limitation period was triggered on December 10, 2013), the statute of limitations lapsed.

In the Rule 32 petition filed in February 2017, Bowman's counsel stated that he "failed to timely file a notice of appeal within 42 days of the May 2014 [order] under the mistaken impression that the time delay for filing the same would not begin until after a denial of a post-judgment motion." (Doc. 12-6 at 161). Bowman's attorney also admitted that he was unaware of the Loggins case before it was cited by the Court of Criminal Appeals. (Id. at 161 n.1). However, Bowman's attorney made clear that he "did not act intentionally or with any malice." (Id. at 162). At the hearing on Bowman's second Rule 32 petition, Bowman's counsel described the failure to timely file a notice of appeal as "our miscalculation, an error that essentially everyone thought was correct, but it was wrong." (Doc 12-8 at 60).

Any errors by Bowman's post-conviction counsel do not rise above the negligence of negligence, and therefore do not constitute extraordinary circumstances warranting equitable tolling. See Baker v. Bolling, 2018 U.S. Dist. LEXIS 170970, at *10-11, 2018 WL 6274059, at *5 (S.D. Ala. Oct. 2, 2018), report and recommendation adopted, 2018 U.S. Dist. LEXIS 203642, 2018 WL 6272898 (S.D. Ala. Nov. 30, 2018). An attorney's negligence, even gross negligence, is not by itself enough to meet the extraordinary circumstances element of equitable tolling. Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1236 (11th Cir. 2017), cert. denied, 138 S. Ct. 1042 (2018); Lawrence v. Florida, 549 U.S. 327, 336–37 (2007) ("Attorney

miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.").

Because the record conclusively demonstrates that the failure of Bowman's attorneys to timely appeal the May 2014 denial of his Rule 32 petition and to timely file the instant habeas petition were, at most, the product of counsel's good faith but negligent misunderstanding of the law, Bowman has not established the extraordinary circumstances element of equitable tolling. Accordingly, Bowman has failed to demonstrate that he qualifies for equitable tolling of the limitation period.

**C. Actual Innocence.**

Rather than demonstrating justification for equitable tolling, Bowman asserts that the AEDPA's time bar does not apply to him because he is actually innocent of the crime for which he was convicted. (See Doc. 13 at 1-2). As an initial matter, the Court notes that no federal habeas relief is available for freestanding, non-capital claims of actual innocence. Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007); Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Therefore, Bowman is entitled to no

affirmative relief from this Court with respect to any freestanding claim of actual innocence that does not involve an independent constitutional violation.

However, a habeas petitioner's actual innocence may serve as a gateway to consideration of constitutional claims otherwise time-barred under the AEDPA's one-year limitation period. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). To successfully assert actual innocence as a gateway to review of time-barred claims, a habeas petitioner is required "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (per curiam) (citations omitted). The actual innocence gateway requires a petitioner to show "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

This "standard is demanding and permits review only in the 'extraordinary' case." House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of [untimely] claims." Id. at 537.

> [A] substantial claim that constitutional error has
> caused the conviction of an innocent person is extremely
> rare.  To be credible, such a claim requires petitioner
> to support his allegations of constitutional error with
> new reliable evidence—whether it be exculpatory
> scientific evidence, trustworthy eyewitness accounts, or
> critical physical evidence—that was not presented at
> trial.  Because such evidence is obviously unavailable
> in the vast majority of cases, claims of actual innocence
> are rarely successful.

Schlup, 513 U.S. at 324 (internal citation omitted).

A "petitioner's showing of innocence is not insufficient solely because the trial record contained sufficient evidence to support the jury's verdict."  Id. at 331.  Nevertheless, a mere "showing that a reasonable doubt exists in the light of the new evidence" is not sufficient to satisfy this standard.  Id. at 329.  Rather, to invoke the actual innocence exception to the AEDPA's statute of limitations, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  Id. at 327.

"Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing."  McQuiggin, 569 U.S. at 399.  In assessing "the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial[,] . . . the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence."  Schlup, 513 U.S. at 332.

Bowman asserts that he is actually innocent of the murder for which he was convicted, and, in support of this assertion, he relies on the December 2013 affidavit of his ex-wife, Angela Bowman, who testified against him at trial. In the affidavit, Angela Bowman avers:

> I am the ex-wife of Ronald Bowman. I am doing this because I know it's right. I was not asked to change my story. The statements I gave during Ronald's murder trial were coerced and not true. I was forced to give fraudulent statements for the safety of myself and my children. The investigators threatened to send me to prison and take my children from me. People came by my house and were throwing things through my windows. People were threatening my sister and her kids. My whole family was threatened. I was scared.
>
> I tried to cooperate with the authorities. I had been cooperating with them. It was Johnny Tubbs with the Alabama Bureau of Investigations, and Blanchard McCloud and Kira Sparks, both attorneys, who were interviewing me. They were trying to make me testify against Ronald. They kept saying I was being abused by him, which is why I wouldn't testify against him. Even after I gave my first statement, they went back on their word. They already knew I wasn't involved. Ronald had gave a statement that I wasn't involved. But they said they weren't believing what he was saying and what I was saying. So I told them what they wanted to hear.
>
> The statement I gave was only stuff that I had heard, just some stuff me and Ronald saw on the news. The day we saw it on the news, we were already having a fight that morning. He was aggravating me. When Ronald saw it on TV, he was just saying it back to me. So I gave my statement off of that.
>
> But he didn't do it. At the time the police said it happened, we were talking to a friend at someone else's house. There was no way we could even see that store. We would have had to walk a ways or drive to get there. But things just got bad after that. We couldn't go to the store or make phone calls. The police were flying

over the house with helicopters.  They started asking me
where he was and told me if they saw him, they would
kill him on sight.  I didn't want him to get killed.  So
I told the police where he was.

The investigators still kept pressuring me.  I was
questioned for 16-17 hours by Ed Green.  They told me
there would be a two-year waiting period to see what
happened to Ronald, then they would come after me.  I
went to go see Ronald at the Perry County jail and they
arrested me with my kids there.  Then they told me they
would take my kids from me.  They told me they had
statements from people who said I was involved but I
knew none of it was true.  If they didn't threaten to
take my kids from me, I would've never talked to them.

I'm not doing this because anyone is making me.  I'm
doing this because I know it's right.  I hadn't even
spoken to Ronald in a long time.  I was terrified to
ever speak to him or communicate with him.  I didn't say
anything before now because I was scared they were going
to do to me what they did to him.

(Doc. 12-6 at 26-27).

Bowman's evidence of Angela Bowman's recantation of her trial
testimony does not satisfy his burden of producing "new *reliable*
evidence" under Schlup.  See Schlup, 513 U.S. at 324
(characterizing "new reliable evidence" as "exculpatory scientific
evidence, *trustworthy* eyewitness accounts, or critical physical
evidence") (emphasis added).  "Recantation testimony is properly
viewed with great suspicion.  It upsets society's interest in the
finality of convictions, is very often unreliable and given for
suspect motives, and most often serves merely to impeach cumulative
evidence rather than to undermine confidence in the accuracy of
the conviction."  Dobbert v. Wainwright, 468 U.S. 1231, 1233-34

(1984) (Brennan, J., dissenting); see also United States v. Santiago, 837 F.2d 1545, 1550 (11th Cir. 1988) ("[R]ecantations are viewed with extreme suspicion by the courts."); In re Davis, 565 F.3d 810, 825 (11th Cir. 2009) (per curiam) (same).

As the Ninth Circuit has noted, "[r]ecanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial." Jones v. Taylor, 763 F.3d 1242, 1248 (9th Cir. 2014) (quotation omitted). "For these reasons, a witness' 'later recantation of his trial testimony does not render his earlier testimony false.' Rather, a witness' recantation is considered in addition to his trial testimony and in the context in which he recanted when assessing the likely impact it would have on jurors." Id. (internal citation omitted).

Given that the only "new" evidence offered by Bowman is his ex-wife's recanting affidavit and the "extreme suspicion" with which this Court must view that recantation, Bowman bears a particularly heavy burden to show that his ex-wife's statements are reliable. Cf. id. ("[I]ndeed, the proof is even less reliable . . . because it is all in the form of recantation testimony, uncorroborated by other evidence."). Bowman's burden is made even heavier by the fact that his new evidence is the recanted testimony of a self-proclaimed perjurer. See Taite v. Stewart, 2016 U.S. Dist. LEXIS 103755, at *36 n.21, 2016 WL 4154257, at *12 n.21 (S.D.

Ala. June 28, 2016) ("That Smith readily admits to committing perjury renders his statements further suspect."), report and recommendation adopted, 2016 U.S. Dist. LEXIS 102428, 2016 WL 4148363 (S.D. Ala. Aug. 4, 2016). The Court finds that Angela Bowman's recanting affidavit is suspect and unreliable, for several reasons.

First, the timing of Angela Bowman's recantation is suspect. Her affidavit was executed in December 2013, more than a decade after Bowman's conviction in his second murder trial. See Williams v. Hoffner, 2016 U.S. Dist. LEXIS 66366, at *20, 2016 WL 2937130, at *7 (E.D. Mich. May 20, 2016) ("Harvey apparently did not indicate that he was willing to recant his trial testimony until five years after Petitioner's trial and did not execute his affidavits until 16 years after trial. Such a long delay in coming forward renders his recantation inherently suspect."); Olson v. United States, 989 F.2d 229, 232 (7th Cir. 1993) (finding recantation made more than four years after trial testimony to be suspect); Lewis v. Smith, 100 F. App'x 351, 355 (6th Cir. 2004) (finding it proper for district court to reject as suspicious a witness' recanting affidavit made two years after trial); Bates v. Metrish, 2010 U.S. Dist. LEXIS 32732, at *29, 2010 WL 1286413, at *11 (E.D. Mich. Mar. 30, 2010) (finding recantation "suspect and unreliable" because the witness "waited 10 years after the trial to indicate that he was willing to recant his trial testimony and

16 years after trial to execute his affidavit"). The only reason offered by Angela Bowman for the lengthy delay is her vague assertion that she "was scared they were going to do to me what they did to him." (See Doc. 12-6 at 27).

Moreover, the only explanation given by Angela Bowman for the abrupt change in her story is the general statement that she "know[s] it's right." (See id. at 26-27). However, Angela Bowman's relationship with Bowman, her former husband and the father of her child, casts doubt on her motives and credibility, particularly given the extraordinarily long delay between her trial testimony and subsequent recantation. See House, 547 U.S. at 522 (noting that testimony by friends or relations of the accused might have less probative value than testimony from disinterested witnesses); McCray v. Vasbinder, 499 F.3d 568, 573 (6th Cir. 2007) (stating that family members "have a personal stake in exonerating" a defendant); Jones, 763 F.3d at 1249 ("Several features of the recantations here persuade us that they are insufficient to prove Jones' innocence. The recantations are all from Jones' family members, which reduces their weight and reliability."); Washington v. Delo, 51 F.3d 756, 761 (8th Cir. 1995) (stating that recently submitted affidavits by a petitioner's friend and cousin could "be considered potentially biased statements made by a friend and a relative about events that are now over twelve years old").

Further, Angela Bowman's affidavit is lacking in concrete detail. Angela Bowman avers that she was with Bowman talking to a friend at someone else's house at the time of the murder. Interestingly, she does not provide the name of the "friend" with whom she and Bowman were purportedly talking, nor does she identify the person at whose home the discussion with the unnamed "friend" took place. If Angela Bowman's most recent version of events were credible, surely Bowman himself would have identified the "friend" and offered said individual as an alibi witness to law enforcement and at his trial.

Angela Bowman's affidavit is also contradicted by Bowman's own statements to investigators. Most obviously, Bowman confessed to the murder to authorities on March 3, 1999. (See Doc. 17-7 at 195; Doc. 17-8 at 2-6). And in October 1998, prior to Bowman's arrest for the robbery and murder of Catherine Fuller Warren and several months before his confessions to the murder, Bowman provided a statement to Agent Johnny E. Tubbs of the Alabama Bureau of Investigation at the Selma Police Department in which he placed himself and Angela Bowman in Marion on the date of the murder and in his father-in-law's vehicle.[7] At that time, he stated:

---

[7] Bowman was at the Selma Police Department on October 15, 1998 after being arrested for robbing and assaulting an elderly couple at their home on October 3, 1998. (See Doc. 17-2 at 6-7; Doc. 17-4 at 68). Bowman gave a statement to Agent Tubbs on October 15, 1998, confessing to the assault and robbery of the elderly couple. (Doc. 17-2 at 6-7). In the statement, Bowman stated: "The reasons

> On the day that the cashier was kill [sic] at Jr. Food
> Store in Marion, me, my wife, Angela Bowman, and two (2)
> of our kids left home at approximately 7:30 a.m. en route
> to Marion, Alabama.  When we got to Marion, we ate
> breakfast at Hardee's, then we went to the washteria
> across from Jitney Jungle and washed.  We left the washer
> at approximately 10:30 a.m. and went home in Sprott,
> Alabama.  The route we took to Sprott was through town
> to AL 14, AL 14 to County road 64.  After we left the
> washer, we didn't stop anywhere else.  We were riding in
> my father-in-law's (Cecil Huff) 1972 Buick Limited,
> yellow in color.

(Doc. 17-2 at 7; Doc. 17-3 at 3; Doc. 17-8 at 6, 10-11).  Bowman

also stated that "[w]e had to leave the washer in a hurry so we

could take my father in law his car because he had to go to the

doctor." (Doc. 17-2 at 7; Doc. 17-3 at 3; Doc. 17-8 at 11).  While

this statement differs from Angela Bowman's trial testimony in

some aspects, most notably Bowman's claim that the family made no

stops between the laundromat and home, it is consistent with her

testimony in a number of ways, including the identification of the

vehicle used, the identity of the vehicle's occupants, and the

fact that the couple left the laundromat and took the route toward

their home in Sprott, Alabama.  It also corresponds with the

testimony of Cecil Huff, Bowman's father-in-law, that he needed

the car back that morning in order to get to his doctor's

appointment.  Notably, in neither Bowman's October 1998 statement

---

I robbed and assaulted the elderly couple were my kids needed
pampers and milk and I knew that the elderly white man was a
racist." (Id. at 7).  Bowman pled guilty in that case in 1999.
(See id. at 68-69).

nor his March 1999 confessions did he allege that on the morning of the Warren murder, he and Angela Bowman stopped and visited with a friend, as Angela Bowman now asserts in her affidavit.

Angela Bowman claims that she only testified against her husband as a result of coercion by the authorities, and her affidavit implies that she only agreed to testify against Bowman after a sustained campaign of threats, pressure, and harassment, including threats of imprisonment and losing her children from law enforcement. However, the trial record reflects that she provided a statement implicating Bowman on October 8, 1998, around the time that the car used in connection with the robbery was initially linked to her father.[8] (See Doc. 17-7 at 153, 155, 180-82). At that time, Bowman was no longer living with Angela Bowman.[9] (Id. at 153). Bowman was arrested for the murder in December 1998, and Angela Bowman testified before the grand jury in February 1999. (Doc. 17-4 at 96; Doc. 17-7 at 155-56; Doc. 17-8 at 23). At that time, she had not been charged or arrested by the authorities. (Doc. 17-7 at 156). After the grand jury heard her testimony, it returned an indictment against her, and she was arrested on March 1, 1999. (Doc. 17-4 at 100-01; Doc. 17-7 at 156). This sequence

---

[8] Investigators first gained access to the vehicle on October 9, 1998. (Doc. 17-7 at 181-82).

[9] When asked whether Ronald Bowman was living with her when she spoke to Agent Tubbs in October 1998, Angela Bowman advised that she "hadn't even seen him." (Doc. 17-7 at 153).

of events, which suggests that Angela Bowman implicated Bowman almost immediately after being contacted by law enforcement, contradicts her claims of coercion. For the reasons listed above, Bowman has not presented new reliable evidence and, accordingly, has not satisfied the first element of the actual innocence exception.

Bowman has also failed to satisfy the second element, because he cannot "show 'that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence." See Rozzelle, 672 F.3d at 1011 (quotation omitted). When Angela Bowman's recanting affidavit is considered along with the evidence adduced at trial, it is clear that the State presented ample evidence of Bowman's guilt. This evidence included testimony from an eyewitness placing Bowman's father-in-law's distinctive, "mustard colored" vehicle near the scene of the crime with three people inside and a black male running toward the vehicle from the direction of the Jr. Food store. (Doc. 17-6 at 155-178). It also included testimony from Angela Bowman's father that Bowman and Angela Bowman used his car on the morning of the murder and that, although he asked them to have it back by 10:00 a.m. so he could travel to his doctor's appointment, the vehicle was not returned in time for him to drive it to his appointment. (Id. at 179-94). Additionally, Isiah Newell, Bowman's cellmate at the Dallas County Jail in the autumn

of 1998, testified that Bowman stated his intent to kill some men who had attacked and robbed him. (Doc. 17-7 at 40, 44-45). Newell testified that Bowman "said he got away with [killing someone] one time, and was going to get away with it again." (Id. at 45). Newell also testified that Bowman explained this comment by telling him that "he had robbed and killed a cashier at Jr. Food." (Id. at 46). Jonathan Carter, another inmate at the Dallas County Jail in the autumn of 1998, also testified that Bowman told him that he killed a convenience store cashier in Marion, Alabama. (Id. at 63-64, 66-67).

Most significantly, Bowman confessed to the robbery and murder. At Bowman's own request, his confession was audio-recorded by Agent Tubbs, and this recording was played at trial. (Id. at 193-95). Immediately after Bowman gave a recorded confession, Agent Tubbs completed a handwritten statement based on information provided by Bowman, which Bowman reviewed, initialed, made corrections to, signed, and dated. (Id. at 200-202; Doc. 17-8 at 2-6). In his closing argument, Bowman's trial counsel did not dispute that Bowman committed the robbery and murder. (See Doc. 17-8 at 45-55). Instead, he argued that Bowman was not guilty of *capital* murder because the State had failed to prove Bowman's specific intent to kill Catherine Fuller Warren. (See id.). In view of the substantial, and indeed, overwhelming evidence of Bowman's guilt and Angela Bowman's suspect and unconvincing

recantation, Bowman has failed to make the requisite showing of actual innocence to overcome § 2244(d)'s time bar.

In sum, regardless of whether the period of limitation is calculated under § 2244(d)(1)(A) or § 2244(d)(1)(D), Bowman's habeas petition is untimely, and he has failed to demonstrate his entitlement to equitable tolling or that is he actually innocent of the crime for which he was convicted. Accordingly, the undersigned recommends that the instant habeas petition be dismissed as time-barred pursuant to § 2244(d)(1), and that judgment be entered in favor of Respondent.[10]

## IV. **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing 2254 Cases. The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

---

[10] Because the Court finds that Bowman's claims are time-barred, it is not necessary to reach the other arguments raised by the Respondent.

When, as in the instant case, a habeas petition is dismissed on procedural grounds without reaching the merits of any underlying constitutional claim, a certificate of appealability should issue only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  When a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (quotation omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

In the instant case, Bowman's claims are time-barred, and he has failed to present extraordinary circumstances beyond his control and unavoidable even with diligence that prevented him

from filing his petition in a timely manner.  See <u>Steed</u>, 219 F.3d at 1300.  He has also failed to make a sufficient showing of "actual innocence" of the offense for which he was convicted to overcome the time bar.  See <u>Schlup</u>, 513 U.S. at 327.  Thus, under the facts of this case, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Bowman should be allowed to proceed further.  See <u>Slack</u>, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").  As a result, Bowman is not entitled to a certificate of appealability, and he should not be permitted to proceed *in forma pauperis* on appeal.

**V.**    **CONCLUSION**

For the reasons set forth above, the undersigned **RECOMMENDS** that Bowman's petition be **DISMISSED with prejudice** as time-barred, and that judgment be entered in favor of Respondent and against Petitioner Ronald Lamar Bowman.  It is further recommended that the Court find that Bowman is not entitled to a certificate of appealability and is not entitled to proceed *in forma pauperis* on appeal.

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **23rd** day of **April, 2021.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**